IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY BERNHARD : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 22-854 |
| BRIAN KULL, THERESA B. KULL, : | |
| DAVIS & BUCCO, PAUL A. BUCCO, : | Adversary No. 19-167 |
| ESQUIRE, NATHANIEL J. FLANDREAU, : | |
| ESQUIRE. JOHN J. DORSEY, ESQUIRE : | |
| and DAVID S. MAKARA, ESQUIRE : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                             **February 3, 2023**

This is an appeal from an Opinion entered on February 22, 2022 by United States Bankruptcy Judge Eric L. Frank finding a pre-petition debt owed to the Defendants was discharged in the Debtor, Gary Bernhard's 2011 bankruptcy proceedings. Judge Frank also denied the Debtor's request to hold the Defendants in contempt and liable for his attorney's fees. Because the Court finds no clear error or abuse of discretion on the part of the Bankruptcy Court, its decision shall be affirmed.

**FACTUAL BACKGROUND**[1]

This appeal arises out of the Chapter 7 bankruptcy proceedings which Bernhard initiated on July 24, 2011. Bernhard's debts stemmed largely from his ownership and operation of GB Excavating (GBE), a company which provided real property site development services as a subcontractor. Bankr. Ct. Opinion Feb. 22, 2002, 4, Finding of Fact (FF) No. 1, App. Ex. 2, ECF

---

[1] For the most part, this Factual Background is taken from the Findings of Fact outlined in Judge Frank's Opinion which were verified through this Court's review of the trial record set forth in the Appendix.

1

No. 14-1.  In 2008, GBE was experiencing financial difficulties and Bernhard approached his lifelong friend, Defendant Brian Kull, for a loan.  *Id.* at 5, FF Nos. 10, 11.  Kull made two loans to GBE from a joint account he held with his wife: the first in the amount of $10,000 on July 17, 2008, and the second in the amount of $50,000, on April 10, 2009.  *Id.* at 6, FF Nos. 12, 13 and n.7.  On June 10, 2009, Bernhard signed a promissory note payable to Brian Kull wherein he promised to repay the $60,000 plus interest.  *Id.* FF No. 16.  An appraisal of some twelve items of equipment was attached to the 2009 note.  Two of those items, a CAT Crawler and a Bomag Roller, were circled to indicate the parties intended these items to serve as security for repayment.  *Id.* at 7, FF Nos. 20-22.  Between August and December of 2009, Bernhard or GBE paid $3,500 to the Kulls.  *Id.* FF No. 23.

In early 2011, Bernhard advised Kull he was thinking about filing for bankruptcy.  *Id.*, at 8, FF No. 33.  Kull asked whether his debt would be included in the bankruptcy and Bernhard replied "no."  *Id*. FF No. 34.  GBE ceased operating in March 2011 but, contrary to the intent of the Note, it sold the Roller in May 2011 for $16,000 and did not use the proceeds to repay the Kulls.  *Id*. FF Nos. 31, 32. As noted *supra*, Bernhard filed his voluntary Chapter 7 petition on July 24, 2011, listing both his personal debts and the debts of GBE on his bankruptcy schedules.  *Id*. at 9, FF Nos. 35, 38.  Bernhard did not list the debt owed to the Kulls on his bankruptcy schedules, did not inform either his attorney or the trustee that he owed the Kulls money, and did not inform the Kulls he had filed for bankruptcy.  *Id*. FF Nos. 39, 40, 43, 44.  Hence, the Kulls did not learn Bernhard had brought bankruptcy proceedings until the discharge was issued on December 15, 2011, after the deadline for filing either objections to discharge or a complaint to determine dischargeability.  *Id*. FF Nos. 40-42.

On February 14, 2012, Bernhard signed another promissory note in favor of the Kulls in the amount of $63,800, for the two loans made in July 2008 and April 2009, plus accrued interest of $3,800. *Id.* at 11, FF Nos. 51, 52; App., Ex. 1, ECF No. 14-1. On February 13, 2012, Bernhard re-drafted his will to include Brian Kull. App., Ex. 2, at 11, FF No. 53. Between May 2012 and October 2018, Bernhard made sporadic payments to the Kulls, mostly in increments of $200 and $300, totaling $11,177.66. *Id.* at 12, FF No. 56; App., Ex. H.

On February 1, 2019, the Kulls, through their attorneys, the Bucco Defendants,[2] filed suit in the Court of Common Pleas of Montgomery County against Bernhard to collect the monies still due on the 2008/2009 loans. The suit made claims for unjust enrichment and breach of contract, based on the 2012 note. *Id.* FF No. 57. In response, Bernhard filed preliminary objections arguing the debt had been discharged in the 2011 bankruptcy, which were overruled by the Montgomery County Court. *Id.* FF Nos. 59, 60. Bernhard then removed the case to this Court, where it was assigned to Judge Kenney. Because both parties were residents of Pennsylvania and the claims were based solely on state law, Judge Kenney remanded the matter to state court for lack of jurisdiction on July 29, 2019. FF Nos. 61-64. Civ. A. No. 19-2081, ECF No. 14. Bernhard then initiated this Adversary Action in the Bankruptcy Court on August 23, 2019 alleging the Kulls and Bucco Defendants were in contempt of the December 15, 2011 Discharge Order, and seeking an Order directing Defendants to cease all further collection activities and pay Bernhard's attorney's fees. Adv. Compl., Adv. No. 19-167, ECF No. 1. Following trial, Judge Frank issued the February 22, 2022 Opinion in which he found Bernhard's debt to the Kulls had been included in the Bankruptcy Court's Discharge Order of December 15, 2011, and the Defendants' subsequent

---

[2] Specifically, the Bucco Defendants are the Davis Bucco law firm, Nathaniel J. Flandrea, Esquire, Paul Bucco, Esquire, John J. Dorsey, Esquire and David S. Makara, Esquire.

efforts to collect the debt violated the order. Nonetheless, Judge Frank denied Bernhard's request to hold the Defendants in contempt and denied his request for attorney's fees and "related relief." Bernhard challenges Judge Frank's contempt finding and denial of his request for attorney's fees and other damages in this appeal.

**LEGAL STANDARDS**

District courts have jurisdiction to hear appeals from final judgments, orders, decrees and, in appropriate circumstances, from interlocutory orders and decrees of the bankruptcy courts. 28 U.S.C. § 158(a). "In reviewing a bankruptcy court's decision, a district court must apply several standards of review." *Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747, 754 (W.D. Pa. 2016). A bankruptcy court's factual findings are reviewed for clear error and its exercise of discretion is reviewed for abuse thereof. *Id.* (citing *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998)). Its legal determinations are reviewed de novo. *Phila. Ent. & Dev. Partners, LP v. Dep't of Revenue*, 879 F.3d 492, 498 (3d Cir. 2018). Where the bankruptcy court's decision involves a mixed question of law and fact, the district court must parse the factual and legal determinations, and then apply the appropriate standard of review to each one. *In re Terry*, 543 B.R. 173, 177 (E.D. Pa. 2016) (citing *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003)).

"Under the clearly erroneous standard, 'it is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (internal citation and quotation marks omitted). Proper application of this standard requires the district court to uphold the bankruptcy court's factual findings unless it is

"left with the definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2013). Finally, "a bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts." *Swope*, 554 B.R. at 754 (citing *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999)).

**DISCUSSION**

Bernhard's appeal does not challenge the bankruptcy court's determinations that his debt to the Kulls was included in the discharge order of December 15, 2011 and that the defendants' efforts to collect on the debt post-discharge violated that order. Instead, he limits his appeal to just three of the bankruptcy court's factual findings and legal conclusions: (1) the Kulls had no notice of the underlying bankruptcy case in time to claim the debt was non-dischargeable; (2) the contempt remedy did not lie against the Defendants because they lacked the scienter required under *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019); and (3) the sole relief to which Bernhard was entitled was a declaration that the debt which he owed to the Kulls was discharged. In essence Bernhard argues the bankruptcy court "ignored or misapplied Third Circuit precedent," and ignored the evidence and the legal arguments he presented. Debtor's Mem. Supp. Appeal, 8-10, 20, 23-28, ECF No. 12.

A discharge under the Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Although the Third Circuit has yet to decide the issue, the "weight of circuit authority" is that § 524 does not create a private cause of action for violations of orders discharging debts in bankruptcy. *Joubert v. ABN Mortg. Group, Inc.*, 411 F.3d 452, 456 (3d Cir. 2005). *See also, Petruso v. Ford Motor Credit Co.,* 233 F.3d 417,

421 (6th Cir. 2000) (holding § 524 does not create an implied private right of action); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) ("a suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)"); *Lesniewski v. Kamin,* 246 B.R. 202, 214 (Bankr. E.D. Pa. 2000) ("§ 524 generally viewed as implying no private right of action . . ."). Instead, "the remedy for a violation of the § 524 discharge injunction is contempt," and "bankruptcy courts have properly awarded attorney's fees against a party that violates the permanent injunction upon a finding of contempt." *Lesniewski*, 246 B.R. at 214. *See also In re Sanburg Fin. Corp.*, 446 B.R. 793, 802-803 (S.D. Tex. 2011) ("A bankruptcy court can issue any order, including a civil contempt order, . . . which compensates a debtor for damages suffered as a result of a creditor's violation of the discharge injunction . . ." (quoting *Terrebonne Fuel and Lube*, 108 F.3d 609, 613 (5th Cir. 1997).

"To hold a creditor in civil contempt, the debtor must prove by clear and convincing evidence (1) that a valid court order existed, (2) the alleged contemnor knew of the order, and (3) the contemnor disobeyed the order." *Minech v. Clearview Fed. Credit Union*, 632 B.R. 274, 280 (Bankr. W.D. Pa. 2021). In bankruptcy, a court may not hold a creditor in civil contempt for violating a discharge order "where there is a *fair ground of doubt* as to the wrongfulness" of the creditor's conduct. *Id*. at 281 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-1802 (2019)). In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful. *Taggart,* 139 S. Ct. at 1799.[3] Thus, the

---

[3] Prior to the Supreme Court's decision in *Taggart*, the criteria for applying this test in the bankruptcy context was unclear. In *Taggart*, the bankruptcy court had awarded civil contempt sanctions for violation of a discharge order after finding the creditor had been aware of the order and "intended the actions which violated it." *Taggart,* 139 S. Ct. at 1800. On appeal, the bankruptcy appellate panel vacated the sanctions and the Ninth Circuit affirmed because it found the creditor had a "good faith belief" that the discharge order did not apply to the creditor's claim, although that belief was unreasonable. *Id.* at 1801. The debtor appealed. In determining the

6

test for holding a party in contempt for violating a discharge injunction in the bankruptcy context is objective. It requires a debtor to establish by clear and convincing evidence: (1) a discharge order has been entered (discharging the applicable debt); (2) the creditor had notice of the discharge order; (3) collection efforts continued regardless; and (4) there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order. *In re Busby*, 642 B.R. 409, 423 (Bankr. E.D. Pa. 2022) (citing, *Taggart,* 139 S. Ct. at 1802, 1804; *Minech*, 632 B.R. at 280-281; *Thomas v. City of Phila.*, 626 B.R. 804, 814-815 (Bankr. E.D. Pa. 2021)) .

Here, as stated *supra* in footnote 1, the Court finds the trial testimony and other record evidence supports the bankruptcy court's factual findings and legal conclusions. While Bernhard alluded to a possible bankruptcy filing in early 2011, Kull didn't worry about it because Bernhard assured him that his loan would not be included, and Bernhard didn't tell Kull when he actually filed. N.T. Aug. 20, 2020, 183-185, App. Ex. 1. Thus, while the Kulls may have had an inkling that Bernhard was pursuing bankruptcy, Bernhard did not identify them as creditors, tell his attorney or the bankruptcy trustee about the debt, or list the $60,000 loan on his schedules. As a result, there is insufficient evidence the Kulls had actual knowledge of Bernhard's bankruptcy until after the court entered the discharge order in December 2011, and well after the deadline to file objections. The Court therefore finds no error in the bankruptcy court's finding on this first point.

In February 2012, a few months after entry of the discharge order, Bernhard executed another promissory note in favor of the Kulls for the 2008 and 2009 loans and re-drafted his will

---

proper legal standard for holding a creditor in civil contempt, the Supreme Court rejected both the lower courts' application of a so-called "strict liability" standard and the Ninth Circuit's application of a "subjective, good faith" standard, and adopted the test set forth above.

to include Brian Kull. Thereafter, he made periodic payments on the debt through October 2018. N.T. Aug. 20, 2020, 102-103, 183-185, App. Exs. 1, 10. At trial, testimony indicated that Bernhard and Brian Kull had been friends since grade school, travelled together on motorcycle trips, were in one another's weddings, and that Bernhard was the godfather to the Kulls' son. *Id.* at 107, 178-179. Bernhard testified he always intended to repay the loans in full, and that he felt he had a moral obligation to do so. *Id.* at 102-107. The Court finds Bernhard's actions[4] all demonstrate his good intention to repay the debt in full. Likewise, these actions undoubtedly also misled the Kulls into the erroneous, but reasonable belief, that their debt had been excluded from Bernhard's bankruptcy and had not been discharged.[5] In so doing, Bernhard himself created fair grounds to doubt that the discharge order barred the Defendants from initiating and pursuing collection efforts on his debt to the Kulls after its entry on December 15, 2011. The bankruptcy court's

---

[4] Bernhard's actions include assuring Brian Kull that his debt would not be included in any bankruptcy filing which he may make, not identifying the Kulls' debt in his bankruptcy filing or in his schedules, in failing to inform both his own bankruptcy counsel and the Chapter 7 trustee of the Kulls' loans, signing a second promissory note in the Kulls' favor after the discharge order was entered, and in making periodic payments until 2018.

[5] This mistaken but reasonable belief is further supported by a reading of 11 U.S.C. § 523(a)(3), which provides in relevant part:

> **(a)** A discharge under section 727 . . . of this title . . . does not discharge an individual debtor from any debt –
>
> . . .
>
> **(3)** neither listed nor scheduled under section 521(a)(1) of this title [11 U.S.C. § 521(a)(1)] with the name, if known to the debtor, of the creditor, to whom such debt is owed, in time to permit –
>
> > **(A)** . . . timely filing of a proof of claim, unless such creditor had notice or actual notice of the case in time for such timely filing;
> >
> > . . .

determination that the Defendants lacked the necessary scienter to warrant a finding of contempt and an award of attorney's fees and/or sanctions was well supported by the evidence. It did not result from either a legal error or a misapplication of the appropriate law to the facts of this case, and so there is no reason to disturb it.

Finally, because there is no basis to find the Defendants in contempt of the discharge order or to order the payment of attorney's fees or any other damages or sanctions, this Court agrees that the only relief which Bernhard merits is the entry of an Order formally declaring that his $60,000 debt to the Kulls was discharged in his Chapter 7 bankruptcy. Hence, the February 22, 2022 Opinion of the bankruptcy court shall be affirmed in all respects.

An appropriate Order follows.

BY THE COURT:

/s/  Juan R. Sánchez

_____
Juan R. Sánchez,      C.J.